BRYAN, Judge,
dissenting.
I disagree with the main opinion’s rationale for dismissing the father’s appeal as being from a void judgment. Therefore, I respectfully dissent.
In J.L.P. v. L.A.M., [Ms. 2070578, October 31, 2008] — So.3d -, - (Ala. Civ.App.2008) (Bryan, J., concurring in the result), I stated:
“In cases such as this one, when a natural father has established a substantial relationship with his child and has demonstrated a full commitment to the responsibilities of parenthood by participating in the rearing of his child, the natural father’s interest in maintaining that relationship acquires substantial protection under the Due Process Clause of the 14th Amendment to the United States Constitution.
“The 14th Amendment to the United States Constitution provides, in pertinent part, that ‘[n]o State shall ... deprive any person of life, liberty, or property, without due process of law.’ It is *609 well established that a person may not successfully assert a due-process violation unless the person has a protected property or liberty interest at stake. See Morgan County Dep’t of Human Res. v. B.W.J., 723 So.2d 689, 693 (Ala.Civ.App.1998) (citing Slawson v. Alabama Forestry Comm’n, 631 So.2d 953 (Ala.1994)). However, the mere existence of a biological connection between the child and the father does not automatically bestow due-process protection on the father’s parental interests. See Lehr v. Robertson, 463 U.S. 248, 260-61 (1983) (citing Caban v. Mohammed, 441 U.S. 380, 397 (1979) (Stewart, J., dissenting)). Rather, the father’s interest in building and maintaining a relationship with the child is entitled to substantial due-process protection only if the father ‘demonstrates a full commitment to the responsibihties of parenthood by “comfing] forward to participate in the rearing of his child.” ’ Lehr, 463 U.S. at 261 (quoting Caban, 441 U.S. at 392). The father may demonstrate his full commitment to the responsibihties of parenthood by, among other things, demonstrating that he has had a ‘significant custodial, personal, or financial relationship’ with the child. Lehr, 463 U.S. at 262.
[[Image here]]
“Section 26-lOC-Ki), Ala.Code 1975, provides that ‘[a]ny person who claims to be the natural father of a child and fails to file his notice of intent to claim paternity ... prior to or within 30 days of the birth of a child born out of wedlock[ ] shall be deemed to have given an irrevocable implied consent in any adoption proceeding.’ A rigid application of § 26-10C-1© fails to protect the rights of the father who, on the facts presented here, has manifested his intent to exercise his parental responsibility for the child and has created and seeks to maintain a significant personal relationship with the child. See Lehr, 463 U.S. at 261; Ex parte S.C.W., 826 So.2d 844, 851 (Ala.2001) (quoting S.C.W. v. C.B., 826 So.2d 825, 843 (Ala.Civ.App.2001) (Craw-ley, J., dissenting) (citing in turn Note, Protecting the Unwed Father’s Opportunity to Parent: A Survey of Paternity Registry Statutes, 18 Rev. Litig. 703, 727 (1999))) (“‘The Putative Father Registry Act has two purposes: ‘protecting the rights of responsible fathers and facilitating speedy adoptions of children whose fathers do not wish to assume parental responsibility.’ ” ’ (emphasis added)).”
Here, much like in J.L.P., the record on appeal reveals that the father has demonstrated a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of his child. The record on appeal reveals that, on July 15, 2004 — only six days after the child was born' — the father and the mother executed an “affidavit of paternity” stating, in pertinent part, “that this affidavit is a legal document which creates a presumption that the man named above [the father] is the father of [the] child.” The record on appeal also reveals that, on October 5, 2007, the father petitioned the Marion Juvenile Court for custody of the child and that, on January 23, 2008, the Marion Juvenile Court entered an order granting the father certain visitation rights and requiring him to pay child support in the amount of $70 per week. Furthermore, the record on appeal reveals that the father had regularly exercised visitation with the child, had regularly paid child support, and had actively sought to be a part of the child’s life; therefore, under the facts presented here, the father’s interest in continuing his “significant personal relationship” with the child is entitled to substantial due-process protection. See Lehr v. Robertson, 463 *610 U.S. 248, 262, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983).
In this case, we are confronted with facts very similar to those that existed in J.L.P.; accordingly, I conclude that the Putative Father Registry Act, as applied to the father in this case, is unconstitutional because it violates the father’s guarantee of due process of law under the 14th Amendment to the United States Constitution. On that basis, I would reverse the probate court’s judgment granting the stepfather’s petition for adoption and remand the cause for proceedings consistent with this opinion.